UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x          06-CV-2852 (KMW) (DFE)

EUGENIA SPENCER

                              Plaintiff,

            -against-

THE CITY OF NEW YORK (including THE BOARD,
OF EDUCATION OF CITY OF NEW YORK); JAMES
PHILEMY, ILYSA MANDELL, and JOHN and / or
JANE DOE (S), each in their official and individual
capacities,

                              Defendants.

-------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Plaintiff's Speech Addressed a Matter of Public Concern . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.     Content . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.     Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        3.     Context . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Plaintiff Suffered An Adverse Employment Action . . . . . . . . . . . . . . . . . . . . . . . . . 15

Plaintiff Has Established a Causal Connection Between Her Speech and
    the Adverse Employment Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Defendants would not have taken the same adverse
    employment action in the absence of Plaintiff's protected speech
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Plaintiff's State Law Claims Should not be Dismissed For
    Failure to File a Notice of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Pages**

*Anderson v. Creighton,*
    *483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)* . . . . . . . . . . . . . . . . . . . . . 20

*Anderson v. Liberty Lobby, Inc.,*
    *477 U.S. 242, 255 (1986)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Baskerville v. Blot,*
    *224 F. Supp. 2d 723, 737 (S.D.N.Y. 2002)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Brennan v. Norton,*
    *350 F.3d 399, 413 (3d Cir. 2003)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.,*
    *444 F.3d 158, 164-165 (2d Cir. N.Y. 2006)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Cronin v. Aetna Life Ins., Co.,*
    *46 F.3d 196 (2d Cir. 1995)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Donahue v. Windsor Board of Fire Commissioners,*
    *834 F.2d 54, 57 (2nd Cir. 1987)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gallo v. Prudential Residential Services Ltd. Partnership,*
    *22 F.3d 1219, 1223 (2nd Cir. 1994)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gorman-Bakos v. Cornell Coop. Extension,*
    *252 F.3d 545, 2001 U.S. App. LEXIS 11583 (2d Cir. N.Y. 2001)* . . . . . . . . . . . . . . . . 16

*Grant v. Bethlehem Steel Corp.,*
    *622 F.2d 43, 45-46 (2d Cir. 1980)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harlow v. Fitzgerald,*
    *457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)* . . . . . . . . . . . . . . . . . . . . 19

*Harris v. Provident Life & Accident Insurance Company,*
    *310 F.3d 73, 78 (2nd Cir. 2002)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Johnson v. Ganim,*
    *342 F.3d 105, 114 (2d Cir. 2003)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lennon v. Miller,*
   *66 F.3d 416, 420-21 (2d Cir. 1995)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lewis v. Cowan,*
   *165 F.3d 154 (2nd Cir. 199)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Locurto v. Safir,*
   *264 F.3d 154, 166 (2d Cir. N.Y. 2001)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Malley v. Briggs,*
   *475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)* . . . . . . . . . . . . . . . . . . . . 20

*Mandell v. County of Suffolk,*
   *316 F.3d 368, 382 (2d Cir. 2003)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*McKenna v. Wright, 2004 U.S. Dist. LEXIS 725,*
   *2004 WL 102752, *8 n.9 (S.D.N.Y. Jan. 21, 2004),*
   *aff'd, 386 F.3d 432 (2004)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Morris v. Lindau,*
   *196 F.3d 102, 110 (2d Cir. N.Y. 1999)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moskowitz v. Coscette,*
   *3 Fed. Appx. 1 (2nd Cir. 2001)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Munafo v. Metro. Transp. Auth.,*
   *285 F.3d 201, 212 (2d Cir. 2002)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*O'Donnell v. Barry,*
   *331 U.S. App. D.C. 272, 148 F.3d 1126, 1134 (D.C. Cir. 1998)* . . . . . . . . . . . . . . . . . . 15

*Quinn v. Green Tree Credit Corp.,*
   *159 F.3d 759, 769 (2d Cir. 1998* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reed v. A.W. Lawrence & Co.,*
   *95 F.3d 1170, 1178 (2d Cir. 1996)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Richards v. Calvet, No. 99 Civ. 12172,*
   *2005 U.S. Dist. LEXIS 5365, at *38-42 (S.D.N.Y. Mar. 31, 2005)* . . . . . . . . . . . . . . . . 21

*Richardson v. New York State Dep't of Corr. Serv.,*
   *180 F.3d 426, 446-47 (2d Cir. 1999)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Salge v. Edna Indep. Sch. Dist.,*
   *411 F.3d 178, 188 (5th Cir. Tex. 2005)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Spencer v. City of New York, 06 Civ. 2852 (KMW),*
   *2007 U.S. Dist. LEXIS 39101 (S.D.N.Y. May 29, 2007)* . . . . . . . . . . . . . . . . . . . . . 21

*Zieper v. Metzinger,*
   *474 F.3d 60, 67 (2d Cir. 2007)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Other Authorities**                                                                                    **Pages**

*AM ASS'N OF UNIV. WOMEN EDUC., HOSTILE HALLWAYS:*
   *BULLYING, TEASING AND SEXUAL HARASSMENT*
   *IN SCHOOL 29-30 (2001)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*PHILLIP KAUFMAN ET AL., U.S. DEP'T OF EDUC.,*
   *U.S. DEP'T OF JUSTICE, INDICATORS OF*
   *SCHOOL CRIME AND SAFETY: 2001 73 (2001))* . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Richard D. Shane, Teachers as Sexual Harassment Victims:*
   *The Inequitable Protections of Title VII In Public Schools,*
   *61 FLA. REV. 355 (2009)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stephen J. Morewitz, Sexual Harassment &*
   *Social Change In American Society 304 (1996)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATEMENT OF FACTS

Plaintiff, Ms. Spencer was hired by Defendants Department of Education PS / I.S. 208 as a per diem substitute teacher in mid-October of 2003. See Affidavit of Plaintiff Eugenia Spencer (hereinafter referred to as Spencer's Aff.) ¶ 9. She held a teacher's license in special education, an Attendance Teacher's license, and a substitute teacher's license per diem. See Deposition transcripts of Plaintiff Eugenia Spencer (Spencer's dep.) p. 20-21., attached to the Affirmation of Anthony C. Ofodile (Ofodile Affirmation) as Exhibit 13.

Prior to being hired at P.S./I.S. 208 Plaintiff worked for Community Intermediate School (CIS) 166 from 2000 to 2003. Spencer's Aff., ¶ 4. During all times of her employment with CIS, Plaintiff's performance after being observed in her classroom was considered satisfactory. Spencer's Aff., ¶ 5; See evaluation letters annexed to Ofodile Affirmation as Exh. 17.

Public Schools follow a specified process when evaluating a teacher's performance. Spencer's Aff., ¶ 6. Usually there is a pre-observation meeting between the principal and the teacher, followed by an observation meeting (usually done by an assistant principal), followed by a post-observation meeting. Spencer's Aff., ¶ 6. Eventually there is an annual end of year review where a rating is given. Spencer's Aff., ¶ 6. Ratings include an S for satisfactory and a U for unsatisfactory. Spencer's Aff., ¶7.

One result of a U-rating by the administration of a particular school is to have the teacher removed from teaching at that particular school. Spencer's Aff., ¶ 7. Another possible result is to frustrate the teacher's attempts of having a teaching license continued which is required. Spencer's Aff., ¶ 7.

In being hired at P.S./I.S. 208, Plaintiff was interviewed by Defendant Principal James

1

Philemy. Id., p. 41-43. She reported to Assistant Principal Ilyssa Mandel and Assistant Principal Lynn Staton. Spencer's dep., p. 43. Ms. Staton was the supervisor for kindergarten to 4th grade, and Defendant Mandel was responsible for grades 5-7. Spencer's dep., p. 43.

In November of 2003, Plaintiff was offered a permanent Teacher position for the school year teaching a fifth grade class. Spencer dep., p. 48. Defendant Principal Philemy told her that he had observed her since she had been there and he thought that she did very well teaching the students their subjects, as well as interacting with students, parents, faculty ,and administration and he really wanted her to consider taking the job. Spencer dep., p. 54.

She then began training with a 5th grade teacher.  Spencer dep., p. 56. When Plaintiff found out that position would not be permanent because the teacher would return from maternity leave, she informed Philemy that she could not take the position. Spencer dep., p. 58. Philemy told he that he would see what he could do. Spencer dep., p. 59.

Two weeks later Plaintiff learned that there was another position available.  Spencer dep., p. 60. Assistant Principal, Ms. Staton told Plaintiff that she wanted Plaintiff to apply for a math position that was available. Spencer dep., p. 60. When Plaintiff asked Defendant Philemy about the available position, Defendant Philemy told her that he spoke to Assistant Principal Staton and asked Staton to speak to Plaintiff about the position and that he hoped Plaintiff would consider it. Spencer dep., p. 61; see letter dated November 18, 2003 from Philemy to whom it may concern annexed to as Ofodile Affirmation. as Exh 1.

Plaintiff told him that he was aware that her area of studies was in a different Position, social studies, as opposed to Math. Spencer's Aff., ¶ 14. Philemy told her not to worry,  that he and Assistant Principal Mandell were both Math majors, she could call on them anytime, and

2

and they would be willing to model lessons for her.  Id, see also Spencer dep., p. 62.

Plaintiff then accepted the position and was officially considered a permanent substitute teacher on November 24, 2003.  Spencer dep.,p. 64.  See undated e-mail from Ross Gayle to Rjennin and November 25, 2003 letter from Philemy to Charles Peeples annexed to Ofodile Affirmation as Exh. 2.  She was qualified for the position because her license was in special education and she could teach special education classes.  Spencer's dep., pp. 18-21.

Plaintiff was asked to teach four 7th grade classes.  Spencer dep., p. 63.  In three of them she was the only teacher and in one of them, Anita Rivman was the other teacher in the class, that included a majority of special education students and regular students.  Spencer dep., p. 63.

When Plaintiff began in her new role on November, 24, 2003 she received no training prior to it.  Spencer dep., p. 64.  She became the fifth teacher after a string of teachers left that position.  Spencer dep., p. 64.  One teacher told her that he was leaving because the classes were uncontrollable.   Spencer dep., p. 64.

Plaintiff had priority for the next year of getting a full-time teaching position in her subject area.  Spencer dep., p. 68, Spencer's Aff., ¶¶ 15.  Defendant Principal Philemy showed an interest in wanting to hire her, and she was told by different teachers that he was so fortunate to have gotten her, and that she helped him out because she filled an emergency vacancy.  Spencer dep., p. 69.

Plaintiff's employment with Defendants took a turn for the worse immediately after Plaintiff reported to the police a student of P.S./I.S. 208 for stealing her wallet and sexually assaulting her.

In or around December of 2003, a student named Rashawn Belle in P.S. I.S. 208 began to

3

sexually harass Plaintiff. Spencer's Aff. ¶ 16. The student sexually assaulted Plaintiff by referring to her as his wife and rubbing his genitals up against and bumping into her. Spencer's Aff. ¶ 16, Spencer dep., p. 107; incident reports dated 12/19/2003 and 12/22/2003 annexed to Ofodile Affirmation as Exh. 3.

Plaintiff informed Assistant Principal Mandell about the assault, who told Plaintiff document it on incident reports. Spencer dep., p. 108. Mandell also told her that she believed Belle had a crush on her, and that Spencer should confront Belle, or speak with Belle's parents if that did not work. Spencer dep., p. 108. Spencer's Aff., ¶ 21.

When Plaintiff followed Mandell's advice and confronted Belle, Belle responded later on at the close of the class period by stealing her wallet which included her driver's license. Spencer dep., p. 119. Plaintiff was able to recover her wallet, but she was unable to recover her driver's license. At this point she feared for her own physical safety, since now Rashawn Belle, a student who had already been harassing her at school, now knew where she lived. Spencer's Aff., ¶¶ 23-26.

Out of fear, Plaintiff reported Belle's inappropriate behavior towards her, his bumping against her, rubbing his genitals on her and calling her his wife, as well as the theft of her wallet to the police, over the winter recess. Spencer's Aff., ¶ 26; Spencer's dep., p. 119, 127-128; See December 29, 2003 complaint with the NYC Police Department annexed to Ofodile Affirmation as Exh. 4.

On January 5th, 2004 when everyone returned to school from the winter recess, Plaintiff informed Principal Philemy and Assistant Principal Mandell and Staton at the school that she filed a Police Report with 105th precinct against Rashawn Belle. Spencer's Aff., ¶ 27; Spencer

4

dep., p. 129-132, 134; See Incident Report form dated January 5, 2004 annexed to Ofodile Affirmation as Exh 5.

On January 6th, 2004, she then reported both incidents, her wallet being stolen, and Belle's inappropriate behavior towards her to a school Police Officer right in front of Principal Philemy's office door. See School Safety Department incident report annexed to Ofodile Affirmation as Exh. 6. She saw Philemy walk in and out. Immediately afterwards, Philemy came to her classroom unannounced and informally observed her. See Informal Observation dated January 6, 2004 annexed to Ofodile Affirmation as Exh. 7. Plaintiff later learned that she received a U for that observation. Spencer's Aff., ¶¶ 27-28; Spencer dep., p. 140-142., 209-218; See letter dated February 2, 2004 annexed to Ofodile Affirmation as Exh. 8.

As a result of Plaintiff's report, Rashawn Belle was suspended for five days within two weeks and when he returned to school he was escorted to her class. Spencer's Aff., ¶¶ 30-31. The moment he was allowed to return to her class without escort his behavioral problems resurfaced and worsened. Spencer's Aff., ¶¶ 30-31.

Plaintiff then called the police a second time around the end of January beginning of February 2004, because Belle's behavior worsened, and every time she reported to her supervisor Mandell, Mandell's response to Plaintiff would be to fill out a form. Spencer dep., p. 151-153. This time Belle was arrested at school for his inappropriate behavior towards Plaintiff and theft of her driver's license. Spencer's Aff., ¶¶ 33-34.

She informed the principal and or assistant principal that the police were coming to arrest him. Spencer's dep., pp. 153-154. Assistant Principal Mandell was more concerned with not wanting the school to be known as a crime school, as opposed to addressing Plaintiff's concern

5

of sexual harassment by Belle.  Spencer dep., p. 256.

Belle was allowed to come back to Plaintiff's class after he was arrested. Spencer dep., p. 167.  Plaintiff complained to Mandell and filled out student removal forms with the school's administrators. Spencer dep., p. 145-149, 167, 171; See student removal forms dated March 1 and March 5, 2003 annexed to Ofodile Affirmation as Exh. 9.  She also spoke with the Family Court Assistant Corporation Counsel Sharmila Sil. Spencer dep., p. 167, 171.

She spoke with Assistant Corporation Counsel Sharmila Sil about Rashawn Belle rubbing and bumping against her and her wallet theft and driver's license, and then a restraining order was issued in or around March 31, 2004.  Spencer's Aff., ¶ 38. Spencer dep., p. 172.  The school had received a copy of the order.  Mandell's dep., p. 72; Spencer dep., p. 172-174.

Rashawn Belle was subsequently removed from class because of the restraining order. Spencer dep., p. 188-191.

Within two days after the issuance of the restraining order, on April 2, 2004, Defendant Philemy informed Plaintiff that he was scheduling his pre-observation meeting with Plaintiff on April 12, 2004 with the formal Observation to occur on April 16, 2004 in a general education class (class 773).  Spencer's Aff. ¶ 42.  Rather than formally observing Plaintiff on April 14, 2004 as scheduled, Philemy observed Plaintiff on April 19, 2004 in her mixed special education and general education class (774) and gave Plaintiff a U-rating for that observation.  Spencer's Aff. ¶ 47; See letter dated June 30, 2004 annexed to Ofodile Affirmation as Exh. 10.  This U-rating was giving to Plaintiff within three weeks after Plaintiff received an order of protection against Belle.  See Order of Protection dated September 15, 2004 annexed to Ofodile Affirmation as Exh. 16.  Plaintiff later learned that around this time in April of 2004, Defendant Philemy had

made up his mind to give Plaintiff an overall end of year U-rating. Spencer's Aff. ¶ 49.

In addition to giving Plaintiff a U on her observations and end of year evaluation, Defendants took additional opportunities to retaliate against Plaintiff for reporting Belle's behavior to the police and receiving an order of protection against Belle in regards to issues involving another one of Plaintiff's students named Jazmin Martinez. See generally Spencer dep., p. 222-248.

Defendants retaliated against Plaintiff by writing two negative letters to Plaintiff's personnel files accusing Plaintiff of unprofessional behavior towards a Jazmin's parents, and improper documentation of the basis of a student's grade. Spencer's Aff. ¶ 46; See letter dated May 4, 2004, and May 11, 2004 annexed to Ofodile Affirmation as Exh. 11. Both letters were later expunged from Plaintiff's personnel records after Plaintiff successfully challenged them in her union grievances. Spencer's Aff. ¶ 47.

Jasmine Martinez was a student in Plaintiff's class who received a 65 or 70 on her report card from Plaintiff. Jasmine was a problem student and all of her teachers had given her low grades. Spencer's dep., p. 227. Jasmine's parents had received her report card and wanted to meet with all of her teachers to figure out what was going on with their daughter. Spencer's dep., p. 228. The meeting went well. Spencer's dep., p. 227.

Later on, Plaintiff learned that Jasmine's parents wanted to meet with her for a second time, accusing Plaintiff of rudely responding to their daughter. 229-234. At that meeting Plaintiff noted that Defendant Philemy took the parents' side stating that the parents had proof that another student named Yosef, had witnessed Plaintiff rude treatment of Jasmine. Spencer's dep., p. 222. Plaintiff went to investigate the witness and his parent, and the witness told her that

7

he had never said that he saw Plaintiff rudely treat Jasmine.  Yosef's mother said she would talk

to Philemy because she wanted him to know the truth.  When Plaintiff raised up the issue with

Philemy and Mandell, they both said oh, okay.  Spencer's dep., p. 223.

Mandell and Philemy then asked Jazmin's parents to come up again, and at this meeting,

Jasmine's parents repeatedly questioned Plaintiff about why she did not call the parents again to

discuss Jasmine's performance in class.

Prior to this meeting Plaintiff spoke with Mandell and told her that she tried to contact

Jasmine's parents and she was trying to do exactly what the parents wanted her to do in regards

to their daughter. Spencer's dep., p. 223.  Mandell told Plaintiff not to worry, we will get together

and meet to go over all these situations before we meet the parents that way we can show we are

all on the page here with faculty and administration."  Plaintiff's meeting with Mandell never

occurred.  Spencer's dep., p. 224.  Mandell never had time and then another impromptu meeting

with Jazmin's parents would occur.  Id.

During the meeting with Jasmine's parents, Plaintiff responded to Jasmine's parents

accusations, by stating that she had called them on several occasions and she had sent a letter to

their house.  The parents told her that she should have continued to call back.  Spencer's dep., p.

224.  When Plaintiff replied that she did it as a favor, that she was not required to contact them as

per the Collective Bargaining Agreement (CBA), and that she did what she could to contact

them, she received a letter to her file from Mandell telling her that she could lose her teacher's

license because of her aggressive tone.  Spencer's dep., p. 224.  The letter stated "Should this

behavior resurface, it will lead to further disciplinary action including an adverse rating at the end

of the school year or discontinuation of the services as the teacher."  Spencer's dep., p. 245.

With respect to Jasmine's grades, Jasmine's parents wanted to know how Plaintiff arrived at Jasmine's grades.  Jasmine was a student who rarely did her homework, was disrespectful and would not follow instructions.  Spencer's dep., p. 226.  When Plaintiff met with Defendant Mandell and Philemy to show them how she arrived at Jasmine's grades, she was not advised as to what Defendants were looking for, before the meeting or after the meeting. Spencer's dep., p. 226.  Plaintiff then received a letter from Philemy stating that she was negligent in the record-keeping for Jasmine Martinez.  Spencer's dep., p. 226.  Plaintiff was surprised to receive this letter because she spoke to Mandell on at least two or three occasions in regards to getting together with her to have a meeting.   Spencer's dep., p.246.

Both letters were subsequently expunged from Plaintiff's personnel record after Plaintiff successfully challenged them through her union grievance procedures.  Spencer's Aff. ¶ 46-47; See Step II Conference dated June 24, 2004 annexed to Ofodile Affirmation as Exh. 12.

On or about June 17, 2004 Defendant Philemy gave Plaintiff a final U-rating without any substantiating evidence attached to it.  Spencer dep., pp. 72-79.  Principal Philemy gave her the U-rating and he mentioned that he made up his mind to give the U-rating in April.  Spencer's dep., p. 70; Spencer's Aff., ¶ 48.  Plaintiff learned of the U-rating when she saw her report, and no one had communicated to her as to why she had received a U.  Spencer dep., p. 71.

Plaintiff stopped working at Defendants' school in June of 2004 because the Unsatisfactory rating overall on her end of year evaluation was reflected on her modified temporary license in special education.  It rendered her unable to work in that license area. Spencer dep., p. 70, 83-85.  For any other license that Plaintiff applies for, she must state that she received a U, whereupon an investigation is made, taking at least six (6) months.

9

## STANDARD FOR SUMMARY JUDGMENT

In order for the Court to grant Defendant's Motion for Summary Judgment, "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Donahue v. Windsor Board of Fire Commissioners, 834 F.2d 54, 57 (2nd Cir. 1987)* (quoted in *Harris v. Provident Life & Accident Insurance Company, 310 F.3d 73, 78 (2nd Cir. 2002)*).

Summary judgment is appropriate when the record, viewed in light most favorable to the non-moving party, reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law – Rule 56 (c) of Federal Rules of Civil Procedure. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)*.

On a motion for summary judgment, what this Court cannot do is weigh the evidence or try issues of fact. *See Gallo v. Prudential Residential Services Ltd. Partnership, 22 F.3d 1219, 1223 (2nd Cir. 1994)*. Weighing the evidence is for the trier of fact. Even on the claims that the Court believes the Plaintiff may lose at trial, at the summary judgment level, if there are disputed issues of fact, the Court cannot grant summary judgment on those claims. *See Anderson, 477 U.S. at 242 (1986)*. The Court's only duty at the summary judgment level is to determine whether there are issues of fact to be tried. *See Cronin v. Aetna Life Ins., Co., 46 F.3d 196 (2d Cir. 1995)*.

## ARGUMENT

To prevail on a First Amendment retaliation claim, a public employee must establish that (1) her speech addressed a matter of public concern; (2) she suffered an adverse employment

action; and (3) there was a causal connection between the speech and the adverse employment action. See *Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003)*.

If a plaintiff produces evidence of these three elements, a defendant may escape liability on either of two separate rationales. First, the defendant "may show that plaintiff's speech was likely to disrupt the government's activities, and the likely disruption was 'sufficient to outweigh the First Amendment value of plaintiff's speech.'" Id. (quoting *Locurto v. Safir, 264 F.3d 154, 166 (2d Cir. N.Y. 2001)*). Second, the defendant may prevail "by demonstrating by a preponderance of the evidence that [he] would have taken the same adverse action in the absence of the protected speech." Id. (citing *Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. N.Y. 1999)*).

### Plaintiff's Speech Addressed a Matter of Public Concern

Plaintiff reporting to the police the sexual assault on her person by a student and reporting the theft of her wallet and her driving license where the perpetrator knew where Plaintiff resided, is a matter of public concern.

To determine whether speech rises to the level of legitimate public concern, courts examine the "content, form, and context of a given statement, as revealed by the whole record". Matters of public concern generally relates to any matter of political, social, or other concern of the community. *Moskowitz v. Coscette, 3 Fed. Appx. 1 (2nd Cir. 2001)*, citing *Lewis v. Cowan, 165 F.3d 154 (2nd Cir. 199)*.

1.    Content

The contents of Spencer's speech is of concern to the public, since it involves criminal activity in a school, sexual assault of a teacher by a student, and safety in the workplace. Plaintiff reported to the police that one of her students sexually harassed her, by inappropriately rubbing

11

and bumping into her and calling her his wife.  In addition she reported to the police that the same student stole her wallet, and failed to return her driver's license.  Plaintiff's driver's license contained information about where Plaintiff lived.  Plaintiff was afraid that the same student who sexually harassed and assaulted her in school, now knew where she lived and may potentially use that information to escalate his sexual and / or violent assault of her.

Plaintiff called the police again when Belle was allowed to remain in her class out fear that he would retaliate against her.  The second time Plaintiff called the police, it led to criminal charges against Belle who was arrested on school grounds.  Plaintiff then reported Belle's behavior to Family Court Assistant Corporation Counsel Sharmila Sil which subsequently led to Plaintiff receiving a restraining order against Rashawn Belle.

In *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 164-165 (2d Cir. N.Y. 2006)*, the second Circuit held that criminal activity in a school is a matter of "social" or "other" concern to the community, sexual assault on school property is a matter of public concern, and it cited to its holding in *Munafo v. Metro. Transp. Auth., 285 F.3d 201, 212 (2d Cir. 2002)* for the proposition that "safety in the workplace is a matter of public concern".

Although the Court in Cioffi, dealt with the issue of the sexual assault of a student on school property in holding that it was a matter of public concern, the sexual assault of a teacher on school property is equally a matter of public concern and is no less deserving of First Amendment protections.  Here where the contents of Ms. Spencer's speech concerned sexual assault of person on school grounds and theft of her property, the contents is a matter of public concern.

2.     Form

The form of Ms. Spencer's speech was public in nature as oppose to private. She made her speech public by reporting to the Police on two separate occasions–immediately during the winter recess in December 2003, and then again later on after Rashawn Belle's behavior escalated. She also reported to the School Police Officer within viewing distance of Principal Philemy. She also reported to Family Court Assistant Corporation Counsel Sharmila Sil All of these reports were public in form as opposed to private. Since Plaintiff reported her speech in a public forum as oppose to a private forum, the form factor weighs in Plaintiff's favor.

3.      Context

In *Cioffi, 444 F.3d 158, 164-165* the Second Circuit, in analyzing the context in which Cioffi spoke stated "to gauge the community's interest in Cioffi's speech we need only look to the abundant press coverage accorded the [contents of the speech]." See *Cioffi, 444 F.3d 158*, citing (*Salge* v. *Edna Indep. Sch. Dist., 411 F.3d 178, (5th Cir. Tex. 2005)*, noting community's interest in subject matter of plaintiff's speech and fact that speech was made against backdrop of existing community debate). It also stated "We do not mean to say that if there is no media interest in the subject matter of the employee's speech that the speech is not of public concern." *Cioffi, 444 F.3d 158*.

In general, a community debate does exists concerning the contents of Plaintiff's speech– female teacher sexually harassed / assaulted and robbed by male student . See *Richard D. Shane, Teachers as Sexual Harassment Victims: The Inequitable Protections of Title VII In Public Schools, 61 FLA. L. REV. 355 (2009)*, Ofodile Affirmation, Exh. 19. A study conducted by the American Association of University Women in Education (AAUW) revealed that "36 percent of highschool students reported that students do indeed sexually harass teachers and other school

personnel. *Id.,* citing, *(AM ASS'N OF UNIV. WOMEN EDUC., HOSTILE HALLWAYS:*

*BULLYING, TEASING AND SEXUAL HARASSMENT IN SCHOOL 29-30 (2001)).* The study

concluded that while both male and female faculty members may be victims, "sexual harassment

is directed more at women than men. Id. Many of the behaviors directed towards teachers have

included the grabbing of teachers and "unwanted sexual comments and obscene remarks. Id,

citing *(Stephen J. Morewitz, Sexual Harassment & Social Change In American Society 304*

*(1996)).* In addition another report by indicated a total of 68,700 serious violent crimes against

teachers, including rape, sexual assault, aggravated assault, and robbery against school teachers

in the time period between 1995 and 1999. Id., citing *(PHILLIP KAUFMAN ET AL., U.S.*

*DEP'T OF EDUC., U.S. DEP'T OF JUSTICE, INDICATORS OF SCHOOL CRIME AND*

*SAFETY: 2001 73 (2001)).*

    In fact more specifically PS/IS 208 was recently in the news for two teens abusing

another student of the school. See NY Post "In School molest raps for two teens" dated May 18,

2010 annexed to Ofodile Affirmation as Exh. 18. From that newspaper clipping it stands to

reason that sexual assault on school grounds even of a teacher by a student is of intense interest

to the community.

    In determining the context of speech, the Court in addition to gauging the community's

interest in the speech, it also focus on the motive of the speaker. *Lewis v. Cowen, 165 F.3d 154,*

*163-64(2d Cir. 1999).*

    Plaintiff by reporting to the police and by getting a restraining order against Rashawn

Belle, was motivated by multiple concerns, including stopping the sexual harassment of her body

by a student, and teaching public school students in an environment free of sexual harassment.

Defendants are incorrect in stating that simply because Plaintiff was motivated in having Belle removed from her classroom, because he was sexually harassing her, removes her speech from being protected. First her motive in removing Rashawn Belle has a broader public purpose in teaching students in an environment or a classroom free of sexual harassment. Second having a personal stake or motive in speaking does not, on its own, vitiate the status of the speech as one of public concern. See *Johnson v. Ganim, 342 F.3d 105, 114 (2d Cir. 2003)*; *Munafo, 285 F.3d at 211-12* (rejecting contention that plaintiff's speech not of public concern because plaintiff motivated by personal interest); *Brennan v. Norton, 350 F.3d 399, 413 (3d Cir. 2003)* (while speaker's motive is relevant part of context of speech, it is not dispositive when determining whether the speech relates to a matter of public concern); *O'Donnell v. Barry, 331 U.S. App. D.C. 272, 148 F.3d 1126, 1134 (D.C. Cir. 1998)* (motivation is a factor in the public concern analysis but does not destroy character of speech as matter of public concern).

Therefore, the context factor weighs in Plaintiff's favor. Since the Contents of Plaintiff's speech is a matter of public concern, and the form of Plaintiff's speech was public as oppose to private, and context of Plaintiff's speech is a matter of community debate Plaintiff's speech is a matter of public concern.

### Plaintiff Suffered An Adverse Employment Action

Defendants in their Memorandum of law do not contest that Plaintiff in receiving a U-rating on her end of year evaluation which rendered her teacher's license in special education useless, and left her unable to teach because of it, is an adverse employment action.

## Plaintiff Has Established a Causal Connection Between Her
## Speech and the Adverse Employment Action

A causal connection may be inferred by a showing that the protected activity was closely followed by the retaliatory acts complained of. *Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 2001 U.S. App. LEXIS 11583 (2d Cir. N.Y. 2001)* citing *Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)*. The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action". *Gorman-Bakos, 252 F.3d 545* citing *Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446-47 (2d Cir. 1999)* (abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)* (discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing complaint with state human rights office provided prima facie evidence of a causal connection between protected activity and retaliation); and *Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 1980)* (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship).

Plaintiff received a U-rating by James Philemy on an informal observation made on January 6, 2004 one (1) day after Defendants were notified that Plaintiff called the police over the winter break to report that her student, Rashawn Belle stole her wallet and her driver's license, after having repeatedly rubbed and bumped into her inappropriately. See deposition of James Philemy (Philemy's dep.),p. 57-73 annexed to Ofodile Affirmation as Exh. 14.

16

Defendants in their deposition admitted to having knowledge of the fact that Plaintiff called the police on Rashawn Belle over the Christmas Break. See Philemy's dep., p. 89- 91, 106. See deposition of Ilyssa Mandell (Mandell's dep.) p. 59-62 annexed to Ofodile Affirmation as Exh. 15. In her deposition Defendant Mandell admits to having knowledge of the fact right after Christmas break because Rashawn Belle's mother told her and Rashawn's mother was upset that Ms. Spencer came to her house and reported the theft to the police. Mandell's dep., p. 59, 62. Defendants also suspended Belle, because of the theft of the wallet which demonstrates their knowledge of the fact. Mandell's p. 64. The closeness in time one day to be exact between the time Defendants learning of Plaintiff's first amendment protected speech and Defendants action in giving Plaintiff U-rating satisfies the causation element.

Plaintiff received a U-rating on April 19, 2004, not too long after Plaintiff got a restraining order against Rashawn Belle on March 31, 2004 from the Family Court Assistant Corporation Counsel Sharmila Sil. Defendant Mandell admits to having knowledge of the restraining order. Mandell dep., p. 70-71. Although Defendant Principal Philemy denied having knowledge of the restraining order, "when asked who during her deposition, "who would have been the person to give the direction that Mr. Belle be put in other classes to keep him away from Ms. Spencer in order to obey the restraining order", Defendant Mandell responded, "Mr. Philemy". Mandell's dep., p. 72.

Defendant Philemy made up his mind to give Plaintiff a U-rating at the end of the year evaluation, in April of 2004. See Spencer's Aff. ¶ 49. Defendant Philemy in his deposition stated that he did not make up his mind to give Plaintiff a U-rating until June. Philemy's dep., p. 122-125. A material issue of exists on this crucial point and summary judgment must be denied

17

as a result.  The closeness in time three weeks to be exact between the time Defendants learned

of Plaintiff's order of Protection against Belle, and Defendants giving Plaintiff a U-rating on her

formal observation and for the year satisfies the causation element.

### Defendants would not have taken the same adverse
### employment action in the absence of Plaintiff's protected speech

Defendants in the memoranda points to laughable reasons for why Plaintiff received a U-

rating, especially since Defendants admit that they gave Plaintiff no training whatsoever during

the fall semester, and the U-ratings occurred so close in time to when Plaintiff engaged in

protected speech.

With respect to the letter for un-professionalism, Plaintiff disputes that she acted

unprofessionally in her meeting with Jasmine Martinez' parents.  When Jasmine Martinez'

parents questioned Plaintiff about their daughter's grades and accused Plaintiff of not calling

them, Plaintiff responded that she did call them, left them messages, and sent a letter to their

home.  When they told her that it was her duty to continue to call them until she reached them,

Plaintiff stated that she was not required to call them, and she was doing it as a favor.

Immediately after the meeting Plaintiff realized that she needed her own witness to attend these

meetings because Principal Philemy and Mandell were taking the parents side and for reprimand

with letter's fro the file and termination as a teacher.

With respect to the letter for failure to comply with her principal's instructions, Plaintiff

when she was required to bring documentation as to how she arrived at Jasmine Martinez'

grades, was never told what type of documentation was required.  She was not advised by

Defendants as to what they were looking for.  Plaintiff was surprised to receive a letter for failure

to comply with Principal's instructions because when she spoke to Defendant Mandell on at least two or three occasions in regards to getting together to have a meeting.  The meeting never took place, and she was never given instructions as to what documentation was required.

Both letters were expunged from Plaintiff's personnel records after Plaintiff challenged them through her grievance hearings.

Since Plaintiff disputed the two letters to her files for unprofessional conduct and failure to follow Principals (both of which were expunged from Plaintiff's personnel records after her grievance hearing) and since Plaintiff maintains that Defendants conduct stemmed from their motive to retaliate against Plaintiff for engaging in protected speech and receiving a restraining order against Rashawn Belle, an issue of genuine material facts exists.

### Qualified Immunity

The doctrine of qualified immunity protects state actors sued in their individual capacity from suits for monetary damages where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Baskerville v. Blot, 224 F. Supp. 2d 723, 737 (S.D.N.Y. 2002)*(quoting *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*).

In considering whether defendant is protected by qualified immunity, a court "must first determine whether the facts alleged, taken most favorably to plaintiffs, demonstrate a violation of a constitutional right.  If the court determines that they do, it must turn to the second prong of the qualified immunity analysis and determine whether the defendants' actions violated clearly established constitutional rights of which a reasonable person  would have known." *Zieper v.*

19

*Metzinger, 474 F.3d 60, 67 (2d Cir. 2007)*. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)*. A government official's actions are objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995)* (citing *Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)*).

On a motion for summary judgment, dismissal of claims against a defendant on grounds of qualified immunity is appropriate only if "the evidence is such that, even when it is viewed in the light most favorable to the plaintiff [ ] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *McKenna v. Wright, 2004 U.S. Dist. LEXIS 725, 2004 WL 102752, *8 n.9 (S.D.N.Y. Jan. 21, 2004), aff'd, 386 F.3d 432 (2004)*.

Plaintiff had a clearly established right to be free from employment related retaliation for engaging in speech addressing a matter of public concern by reporting to a crime (sexual assault and theft) to the police and receiving an order of protection against a student . Defendants violated that clearly established right in retaliating against Plaintiff by given her a U-rating immediately after she reported sexual assault / harassment and theft to the police and giving her a U-rating for the year overall after she received an order of protection against that student that was found to have sexually assaulted and robbed her . It should be clear to any reasonable public school official (especially Principal and Assistant Principal) that it is a violation of a person's

20

constitutional rights to retaliate against an individual as a result of them reporting theft and

sexually harassing conduct to the police and receiving an order of protection against the

perpetrator.  Therefore Defendants are not protected by the doctrine of qualified immunity.

### Plaintiff's State Law Claims Should not be Dismissed For
### Failure to File a Notice of Claim

This issue was already addressed in *Spencer v. City of New York, 06 Civ. 2852 (KMW),*

*2007 U.S. Dist. LEXIS 39101 (S.D.N.Y. May 29, 2007),* at the motion to dismiss stage.  In it the

court did not dismiss Plaintiff's claims for negligence and intentional infliction of emotional

distress as against Principal Philemy and Assistant Principal Mandell citing to *Richards v.*

*Calvet, No. 99 Civ. 12172, 2005 U.S. Dist. LEXIS 5365, at *38-42 (S.D.N.Y. Mar. 31, 2005)*

(allowing state law claims against a school principal despite her failure to comply with Section

3813(1) because "school principals are not officers within the meaning of the statute").

Defendants cannot now resurrect defenses that have already been previously disposed of.

### <u>Conclusion</u>

Based on the forgoing, Plaintiff request that the Court denies defendant's Motion in its entirety.


Dated:  Brooklyn, New York
        May 28, 2010


                            Respectfully Submitted:

                            OFODILE & ASSOCIATES, P.C.
                            *Attorney for Eugenia Spencer*

                        By: _____
                            ANTHONY C. OFODILE, ESQ.

                            21

Abdul Washington, Esq.
498 Atlantic Avenue
Brooklyn, New York 11217