UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x

EUGENIA SPENCER,                              06 CV 2852 (KMW)

        Plaintiff,

  -against-                                  OPINION & ORDER

CITY OF NEW YORK, et al,

        Defendants.

---------------------------------x

WOOD, D.J.:

      This Opinion memorializes an opinion rendered from the Bench during trial.

      On May 13, 2011, the parties filed a Joint Pretrial Order in which Defendants claimed, for the first time, that they could assert the affirmative defense that Defendants reasonably believed that Plaintiff's complaints to the police and to Family Court would cause disruption in the school (referred to hereinafter as a "disruption defense"). Prior to this time, Defendants relied only on the affirmative defense that they would have made the decision to issue an "unsatisfactory rating" even in the absence of Plaintiff's protected speech. They did not claim that Plaintiff's complaints to the police and Family Court led them to reasonably believe that her actions would cause disruption in the school.

      In the Joint Pretrial Order, Defendants claimed the

disruption defense only by stating that the jury must *also* evaluate "whether the defendants...reasonably believed that plaintiff's complaints to the police and to the Family Court may effect [sic] the smooth operation of public school 208." Later, on July 5, 2011, the Defendants submitted a proposed jury instruction that assumed the availability of a disruption defense. Plaintiff then objected to the assertion of the defense as untimely, stating that late assertion of the defense deprived her of the opportunity to engage in discovery on the subject.

For the following reasons, the Court finds that Defendants have untimely raised the disruption defense, and have therefore waived it.

Generally, a failure to plead an affirmative defense results in a waiver of that defense. However, an affirmative defense may be raised by motion at any time, and will not be waived, *as long as* Plaintiff suffers no prejudice thereby. Where a Plaintiff would suffer unfair surprise, prejudice, or harm, the affirmative defense will be deemed waived.

Defendants waited almost three years after filing their Answer to assert a disruption defense, despite having had the opportunity to do so at many stages of this litigation. Defendants neither raised nor briefed the issue during the parties' extensive motion practice. To allow Defendants to

2

assert this defense now would unfairly prejudice Plaintiff, given that Plaintiff would be deprived of the ability to conduct what would be a particularly fact-intensive inquiry.

Defendants argue that Plaintiff was not only aware of Defendants' intent to assert a disruption defense but also took discovery on this issue. In support of that contention, Defendants offered only three documents (attached hereto as Attachments A, B and C), none of which shows that Plaintiff was aware that Defendants intended to assert a disruption defense.

I therefore find that Defendants have waived the affirmative defense of disruption, and no charge on that issue will be given to the jury.

SO ORDERED.

DATED:  New York, N.Y.
        July 27, 2011

_____
KIMBA M. WOOD
United States District Judge

# ATTACHMENT A



# THE NEW YORK CITY DEPARTMENT OF EDUCATION
## JOEL I. KLEIN, *Chancellor*

Rose Albanese-DePinto, Senior Counselor
OFFICE OF SCHOOL INTERVENTION AND DEVELOPMENT
52 Chambers Street- Room 320 — New York, NY 10007

Walter G. Acham
Regional Safety Administrator
Region III
(718) 281-7656
(718) 281-3487 fax
wacham@nycboe.net

## Guideline for When the Police Come to the School

**When police are summoned by the school:**

- Police should be summoned to the school to prevent personal injury, serious property damage or to investigate a crime.
- The Local Instructional Superintendent and the Regional Safety Administrator should be notified immediately.
- Police can question complainants or witnesses however no one is required to submit to an interview.
- Attempts should be made to contact the parent of all the students agreeing to be questioned.
- The Principal or designee must be present when the police interview students.

**When the police arrive without being summoned:**

- Police must obtain the permission of the Principal to enter a school building unless they are there to make an arrest.
- Police cannot question a student, or remove a student from the school unless the student is being arrested.
- The school cannot provide biographical information on any student.
- The school cannot give access to the school records, student I.D's, etc. In the case that a subpoena is presented, the school should contact the Law Office at _____.
- The school cannot allow students to be searched unless the student is being arrested or if they have probable cause for an arrest.
- Subpoenas must be served during non-school hours.
- If student to be served subpoena is a minor the subpoena has to be served to the parent.

**When a student is being arrested:**

- A warrant or court order is not required for the police to arrest a student.
- The parent of the arrested student must be notified immediately.
- A staff member (not SSA) must accompany the arrested student to the police precinct and remain with the student for a reasonable amount of time or until the parent/guardian arrives.
- If permission to accompany the student is denied by the police, the school should ask where the student will taken and send a staff member.

# ATTACHMENT B

```
                                                          58
    1                          MANDELL
    2    Miss Spencer made, do you recall what complaints
    3    she made to you regarding the problems she was
    4    having with Mr. Bell?
    5         A    I recall two.
    6         Q    What were those?
    7         A    He called her "wifey" and he bumped
    8    into her.
    9         Q    When did she tell you that he called
   10    her wifey and bumped into her?
   11         A    I don't remember.
   12         Q    What did you tell her to do in response
   13    to her complaints?
   14         A    I don't remember.
   15         Q    What did you do as a result of her
   16    complaints?
   17         A    I don't remember.
   18         Q    Did you discuss her complaints with
   19    Mr. Philemy?
   20         A    I don't remember.
   21         Q    Did Mr. Philemy discuss Miss Spencer's
   22    complaints about Rashawn Bell with you?
   23         A    I don't remember.
   24         Q    Did the police come to P.S. 208 as a
   25    result of any complaints that Miss Spencer made
```

**Five Star Reporting, Inc. d/b/a ADL Transcription Services**
***** Suites located in all boroughs *****
(631) 224-5054

```
                                                        59
 1                        MANDELL
 2    regarding Rashawn Bell?
 3          A     Did the police come?
 4          Q     Yes.
 5          A     I don't remember.
 6          Q     Do you recall Miss Spencer's allegation
 7    that Rashawn Bell stole her wallet?
 8          A     Yes.
 9          Q     As you sit here today, do you recall
10    that that theft took place in late December, 2003?
11          A     Yes.
12          Q     Do you recall how you learned about
13    that theft?
14          A     Yes.
15          Q     How did you learn about it?
16          A     Rashawn's mom.
17          Q     What did Rashawn's mom say to you?
18          A     She came to the building the day we got
19    back from Christmas break, January.
20          Q     Do you know what date that was?
21          A     I don't know the exact date.
22          Q     But it was the first week of January?
23          A     Yes.
24          Q     And did she come with anybody?
25          A     I don't remember.
```

Five Star Reporting, Inc. d/b/a ADL Transcription Services
***** Suites located in all boroughs *****
(631) 224-5054

```
                                                          61
  1                             MANDELL
  2        Q      Did she say whether or not Rashawn was
  3   arrested by the police at that time?
  4        A      I don't remember.
  5        Q      Did she express a view regarding the
  6   appropriateness of what Miss Spencer and her
  7   boyfriend did?
  8        A      Did she give her view?
  9        Q      Yes.
 10        A      She was upset.
 11        Q      Did she say why she was upset?
 12        A      She was upset because Miss Spencer came
 13   to the house to get Rashawn.
 14        Q      Did she say whether or not she was at
 15   the house when Miss Spencer came to the house to
 16   get Rashawn?
 17        A      I don't remember.
 18        Q      Did she tell you whether Rashawn Bell
 19   left willingly or not with Miss Spencer and her
 20   boyfriend?
 21        A      Rashawn did go.
 22        Q      Did you understand from what she was
 23   saying whether Rashawn was forced into the car or
 24   threatened to go with them or whether he went
 25   willingly?
```

**Five Star Reporting, Inc. d/b/a ADL Transcription Services**
***** Suites located in all boroughs *****
(631) 224-5054

# ATTACHMENT C

```
                                               151
 1                    PHILEMY
 2      that he was rubbing up against her with his
 3      genitals, did she do anything wrong?
 4           A.    I don't think so.
 5           Q.    Did she violate any rules or
 6      policies of the school in reporting to the
 7      Police that conduct?
 8           A.    I can tell you everything is
 9      written.
10              MR. CHIU:  If she had reported that.
11           Q.    If she had reported it.
12           A.    Everything is in the book, Code of
13      Conduct.
14           Q.    Based on your understanding of the
15      Code of Conduct, would she have done anything
16      wrong?
17           A.    If a Teacher reports anything of a
18      sexual nature, they have some sort of steps on how
19      to deal with it in the Code of Conduct.
20           Q.    What were the steps that she
21      should take to deal with it?
22           A.    They should be in this book.  We
23      have to look it up to check it out.
24           Q.    Did you express any opinion to the
25      Teachers regarding how you would like the
```

**Five Star Reporting, Inc. d/b/a ADL Transcription Services**
\*\*\*\*\* Suites located in all boroughs \*\*\*\*\*
(631) 224-5054

```
                                                     152
  1                       PHILEMY
  2    school to be perceived in terms of whether it
  3    is a dangerous school.  It is a school with
  4    students who are misbehaving or otherwise?
  5         A.   I don't understand.
  6         Q.   Did you ever discuss with anybody
  7    how you wanted issues relating to the students
  8    you had resolved in terms of whether you want them
  9    resolved within the school or whether or not
 10    you want them reported outside to the Police?
 11         A.   It is not what I wanted.  It is
 12    stated in the City Code of Conduct.
 13              MR. OFODILE:  Move to strike those
 14              portions which are non-responsive to the
 15              question.
 16         Q.   Whether you had any meetings,
 17    whether you expressed a view on how you wanted
 18    students disciplined or issues to be dealt with?
 19         A.   This document, every child got one
 20    in the beginning of the school year, and the
 21    parents read it with the students and signed that
 22    they received it, so this is our guiding document.
 23    Anything thereafter we refer to this document.
 24         Q.   But that still means that you have
 25    not answered my question with respect with
```

**Five Star Reporting, Inc. d/b/a ADL Transcription Services**
***** Suites located in all boroughs *****
(631) 224-5054