UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

EUGENIA SPENCER,

                                     Plaintiff,

                                                                                               Opinion & Order
                           -against-                                     06 Civ. 2852 (KMW)

THE CITY OF NEW YORK (including THE
BOARD OF EDUCATION OF THE CITY OF
NEW YORK); JAMES PHILEMY, ILYSSA
MANDELL, and JOHN and/or JANE DOE(S),
each in their official and individual capacities,

                                     Defendants.
_____

KIMBA M. WOOD, U.S.D.J.:

      Plaintiff Eugenia Spencer, a school teacher employed by the New York City Department of Education, brought this action against Defendants James Philemy and Ilyssa Mandell, respectively the Interim Acting School Principal and Interim Acting Assistant Principal of the school where Plaintiff was employed, alleging violations of the First Amendment and 42 U.S.C. § 1983.  Plaintiff sought $220,000 in back pay, $176,000 in front pay, $500,000 in emotional damages, and an unspecified amount of punitive damages.  Transcript of Jury Trial at 829–30 [Dkt. No. 107].  After a five-day trial, the jury found that Defendants violated Plaintiff's First Amendment rights by giving her unsatisfactory employment ratings in retaliation for speech that Plaintiff made as a citizen on matters of public concern and awarded Plaintiff $25,000 in damages.  The Court ordered the conversion of Plaintiff's unsatisfactory performance rating for the 2003-2004 academic year into a satisfactory performance rating and the expungement of

1

three documents upon which Defendants based the unsatisfactory rating.  *Spencer v. City of New York*, 06 CV 2852, 2012 WL 2866263, at *13 (S.D.N.Y. July 12, 2012) (Wood, J).

Plaintiff now seeks attorneys' fees and costs totaling $407,695.00, pursuant to 42 U.S.C. § 1988(b) and Federal Rule Civil Procedure 54(d).  For the reasons stated below, the Court awards Plaintiff attorneys' fees in the amount of $232,390.80 and costs in the amount of $6,668.94.

## DISCUSSION

I. Right to Attorneys' Fees

    a. Prevailing Party Requirement

Section 1988 provides that in cases brought under 42 U.S.C. § 1983 "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  A party is considered prevailing if the suit obtains "at least some relief on the merits of [the] claim."  *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).  "Because the prevailing party test requires only that the suit obtain 'some' of the benefit sought, the fact that specific relief prayed for in the complaint was not obtained by the plaintiff does not preclude prevailing party status."  10 James WM. Moore et al., *Moore's Federal Practice* § 54.171[3][c] (3d ed. 2013).  The central inquiry is whether the party "has favorably effected a 'material alteration of the legal relationship of the parties' by court order."  *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)).

Plaintiff in this case is clearly the prevailing party.  The jury found that Defendants violated her First Amendment rights, and they awarded her $25,000 in damages.  The Court further ordered the conversion of Plaintiff's unsatisfactory performance rating for the academic

year into a satisfactory performance rating and the expungement of three documents upon which Defendants based the unsatisfactory rating.  Although Plaintiff sought far more than the $25,000 in damages the jury awarded, "the limited success of the suit goes not to [the determination of prevailing party status], but instead to the amount of the reasonable fee."  10 James WM. Moore et al., *Moore's Federal Practice* §54.171[3][c] (3d ed. 2013).

      II.      Reasonable Fee Amount

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), the Second Circuit "'abandon[ed]' the 'lodestar' approach to awarding attorney's fees, and adopted instead a 'presumptively reasonable fee' calculation."  *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009).  Although the Supreme Court has since expressed its preference for the lodestar method in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), most district courts in this Circuit continue to apply *Arbor Hill*'s "presumptively reasonable fee" calculation in setting the reasonable fee amount.[1]  Accordingly, this Court will determine the reasonable fee amount using the Second Circuit's preferred method.

---

[1] *See, e.g.*, *Friedman v. Sharinn & Lipshie, P.C.*, 12 CV 3452, 2013 WL 1873302, at *8–9 (E.D.N.Y. Mar. 28, 2013) ("Nonetheless, the Supreme Court did not explicitly reject the Second Circuit's approach, and *Arbor Hill* has not yet been revisited by the Circuit in light of *Perdue* . . .  Accordingly, this Court applies the *Arbor Hill* factors in determining the 'presumptively reasonable fee.'") *report and recommendation adopted*, 2013 WL 1869924 (E.D.N.Y. May 3, 2013); *Finkel v. Rico Elec., Inc.*, 11 CV 4232, 2012 WL 6569779, at *12–14 (E.D.N.Y. Oct. 1, 2012) *report and recommendation adopted*, 2012 WL 6561270 (E.D.N.Y. Dec. 17, 2012); *Ensign Yachts, Inc. v. Arrigoni*, 09 CV 209, 2012 WL 4372002, at *3–4 (D. Conn. Sept. 24, 2012); *Study Logic, LLC v. Clear Net Plus, Inc.*, 11 CV 4343, 2012 WL 4329349, at *17 (E.D.N.Y. Sept. 21, 2012); *S.M. v. Taconic Hills Cent. Sch. Dist.*, 09 CV 1238, 2012 WL 3929889, at *4 (N.D.N.Y. Sept. 10, 2012) *reconsideration denied*, 2013 WL 1181581 (N.D.N.Y. Mar. 20, 2013); *Greathouse v. JHS Sec., Inc.*, 11 CV 7845, 2012 WL 3871523, at *9 (S.D.N.Y. Sept. 7, 2012) (Gorenstein, Mag.) *report and recommendation adopted as modified*, 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012) (Engelmayer, J.); *Archbold v. Tristate ATM, Inc.*, 11 CV 5796, 2012 WL 3887167, at *6–7 (E.D.N.Y. Sept. 7, 2012); *IMS Health Inc. v. Sorrell*, 07 CV 188, 2012 WL 2915845, at *1–2 (D. Vt. July 17, 2012).  *But see Abdel-Samed v. ING Life Ins. & Annuity Co.*, 12 CV 925, 2013 WL 1962673, at *1 (D. Conn. May 10, 2013) ("In 2010, the Supreme Court reaffirmed its holding that federal courts must calculate an award of attorney's fees under the lodestar approach, i.e., as the number of hours worked multiplied by the prevailing hourly rates."); *Parris v. Pappas*, 844 F. Supp. 2d 262, 265 (D. Conn. 2012); *Harris v. Fairweather*, 11 CV 2152, 2012 WL 3956801, at *6–7 (S.D.N.Y. Sept. 10, 2012) (Peck, Mag.) *report and recommendation adopted*, 2012 WL 5199250 (S.D.N.Y. Oct. 19,

Under the presumptively reasonable fee calculation, the court first sets a "'reasonable hourly rate,' bearing in mind all the case-specific variables" highlighted by the Second Circuit in *Arbor Hill*. *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 510–11 (S.D.N.Y. 2010) (Chin, J). The court then "uses that reasonable hourly rate to calculate the 'presumptively reasonable fee' by multiplying the rate by the number of hours reasonably expended." *Id.* Once the presumptively reasonable fee is determined, the court adjusts the figure "for traditional factors such as the degree of the plaintiff's success." *Id*.

    a. Reasonable Hourly Rate

The reasonable hourly rate is the rate "a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F. 3d at 184. In determining what a reasonable, paying client would be willing to pay, the Second Circuit instructed district courts to consider the twelve factors listed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th. Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

2012) (Castel, J.); *Diamond v. O'Connor*, 05 CV 279, 2010 WL 9459022, at *2 (D. Vt. June 10, 2010). Other courts conflate the two methods. *See, e.g., United States v. Hylton*, 11 CV 1543, 2013 WL 3927858, at *1 (D. Conn. July 26, 2013) ("Courts within the Second Circuit apply the lodestar formula—'the product of a reasonable hourly rate and the reasonable number of hours required by the case'—to calculate a 'presumptively reasonable fee.'"); *Cumulus Broad. v. Okesson*, 10 CV 315, 2012 WL 3822019, at *4 (D. Conn. Sept. 4, 2012); *Fairbaugh v. Life Ins. Co. of N. Am.*, 872 F. Supp. 2d 174, 192 (D. Conn. 2012), *supplemented* (Aug. 20, 2012), *appeal withdrawn* (Nov. 30, 2012).

*Id.* at 187.

> The Second Circuit further directed district courts to consider:
>
> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184.

The Supreme Court has mandated that courts set "'reasonable fees' under § 1988 . . . according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Generally, the "'community' for purposes of this calculation is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190. It is is the fee movant's burden to establish the prevailing market rate. *Blum*, 465 U.S. at 895 n.11. The district court must engage in a "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005). This inquiry "may . . . include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district," but it "also requires an evaluation of evidence proffered by the parties." *Id*. "[I]n order to provide adequate compensation where the services were performed many years before the award is made, the rates

used by the court . . . should be 'current rather than historic hourly rates.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998).

Plaintiff requests the following hourly rates for her attorneys: $500 an hour for lead counsel, Mr. Ofodile, and co-counsel, Mr. Karlin, and $225 an hour for Mr. Washington, an associate with Ofodile & Associates, P.C.[2] Defendant argues that these rates are excessive and unreasonable and instead suggests $300 an hour for Mr. Ofodile and Mr. Karlin and $150 an hour for Mr. Washington.

### i. Mr. Ofodile's and Mr. Karlin's Reasonable Hourly Rates

Plaintiff requests an hourly rate of $500 for Mr. Ofodile's services. (Ofodile Decl. ¶ 15 [Dkt. No. 134]). In support of this fee request, Mr. Ofodile submits an affidavit detailing his background. Mr. Ofodile is a shareholder of Ofodile & Associates, P.C., and has been practicing law in the fields of civil rights and employment discrimination in New York since he was admitted to the state bar in June 1994. *Id.* ¶ 11. Before then he practiced law in Nigeria, where he was admitted to the bar in 1988. *Id.* ¶ 17. Mr. Ofodile currently has "more than 100 cases reported in official reports . . . cases where in the report itself, [his] name appears as Counsel or in an Affidavit [he] submitted as Counsel." *Id.* ¶ 16. Mr. Ofodile states that the City of New York compensates him at an hourly rate of $450 when a client he represents accepts an offer of judgment in cases within the Eastern District of New York. *Id.* ¶ 14.

In addition, Mr. Ofodile submits the affidavit of Kenechukwu Okoli, an attorney who was admitted to practice law in the State of New York in August 1988 and whose practice since then

---

[2] A fourth attorney, Ms. Polias, an associate with Ofodile & Associates, P.C., also worked on Plaintiff's case. Due to a computer crash, Ms. Polias's time records were destroyed. The Second Circuit has suggested that a Plaintiff may be able to recover attorneys' fees despite the lack of contemporaneous records in "rare circumstances—such as where the records were . . . rendered irretrievable by a computer malfunction before counsel had an opportunity to prepare his application," *Scott v. City of New York*, 626 F.3d 130, 134 (2d Cir. 2010), but Plaintiff does not pursue this argument nor does Plaintiff submit any other evidence of Ms. Polias's work on this case. Plaintiff therefore correctly states that she cannot recover for work performed by Ms. Polias on her case. *Id.*

6

has consisted substantially of civil rights and employment discrimination cases. (Okoli Aff. ¶ 2 [Dkt. No. 138]). Mr. Okoli states that an award of $500 an hour is reasonable for an attorney of Mr. Ofodile's knowledge and experience, "having regard to the fees awarded in the Southern District of New York to attorneys with similar experience and knowledge." *Id.* ¶ 6.[3]

The evidence submitted by Mr. Ofodile does not sufficiently support his request for $500 an hour in attorneys' fees. *Cf. Mugavero v. Arms Acres, Inc.*, 03 CV 5724, 2010 WL 451045, at *2 (S.D.N.Y. Feb. 9, 2010) (Gardephe, J.) (noting that the plaintiff had supplied "substantial documentation to support her request for attorneys' fees and costs," including "itemized records of the hours spent on this case by the attorneys and paralegals, biographical information for the attorneys requesting fees, a detailed summary of [attorney] qualifications and expertise, evidence of the attorneys' standard hourly rate billed to paying clients, and affirmations from experienced civil rights attorneys in [attorney's] geographic area supporting the reasonableness of the fees charged in this case" (internal citations omitted)). Mr. Ofodile is in private practice, but he does not state what his customary billing rate is, nor does he submit any evidence of that rate. *Cf. Parrish v. Sollecito*, 280 F. Supp. 2d 145, 169–70 (S.D.N.Y. 2003) (Marrero, J.) (stating that "[a] reasonable starting point for determining the hourly rate" for a fees award is the "attorney's customary rate"); 10 James WM. Moore et al., *Moore's Federal Practice* § 54.190[2][b] (3d ed. 2013) ("If the fee movant's counsel is in private practice, the most convincing evidence of the market rate is the rate that counsel charges a client in similar actions."). Moreover, despite having "more than 100 cases reported in official reports," Mr. Ofodile does not submit evidence of any court awarding him an hourly rate of $500. The last fee award Mr. Ofodile received in

---

[3] Mr. Okoli's affidavit incorrectly states that Mr. Ofodile was retained in this case in 2006. (Okoli Aff. ¶ 6). Mr. Ofodile was not retained until 2009. The Court will disregard this error, as it is unlikely to have had any effect on Mr. Okoli's opinion that $500 an hour is a reasonable rate for Mr. Ofodile.

the Southern District of New York was based on an hourly rate of $400. *Quiller v. The City of New York*, 06 CV 6846, at 4 (S.D.N.Y. 2011) (Yanthis, Mag.) [Dkt. No. 62].

Plaintiff also requests an hourly rate of $500 for Mr. Karlin. (Karlin Declaration ¶ 8 [Dkt. No. 136]). Mr. Karlin is a solo practitioner admitted to practice law in New York and Florida. *Id.* ¶ 1. Since 1984, Mr. Karlin has practiced in various forums at the trial level, including, for example, the Federal District Courts, the Equal Employment Opportunity Commission, and the Merit System Protection Board. *Id.* ¶ 3. Most of Mr. Karlin's matters concern employment and civil rights cases. *Id.* ¶ 4. Mr. Karlin states that $500 an hour is the customary rate he charges in federal court litigation. *Id.* ¶ 7. In support of Plaintiff's request, Mr. Karlin submits the declaration of Neal Howard Rosenberg, an "expert in education law" who has "represented countless teachers in various forums." (Rosenberg Declaration ¶ 1 [Dkt. No. 137]). Mr. Rosenberg states that the customary hourly rate charged by a federal litigator of Mr. Karlin's experience is between $500 to $600. *Id.* ¶ 6. (Karlin Declaration ¶ 7).

Like Mr. Ofodile, Mr. Karlin does not submit sufficient evidence to support his fee request of $500 an hour. Mr. Karlin states that his customary rate is $500 an hour but he does not submit any supporting evidence, such as a retainer agreement or an affidavit from a former client. Nor does he submit evidence that any previous court has awarded him an hourly rate of $500. The Court will not give substantial weight to Mr. Rosenberg's "expert" declaration. Mr. Rosenberg describes himself as "one of the leading attorneys in the education law field," but does not provide any corroborating details of his expertise except that he has represented "countless teachers in various forums." (Rosenberg Declaration ¶ 2). Further, Mr. Rosenberg's declaration largely repeats the contents of Mr. Karlin's declaration.[4]

---

[4] In fact, paragraph six of Mr. Rosenberg's declaration is almost a word for word repetition of paragraph seven of Mr. Karlin's declaration.

Only one of the *Arbor Hill* factors weighs in favor of Mr. Ofodile and Mr. Karlin. Both Mr. Ofodile and Mr. Karlin are experienced civil rights litigators.[5] The Court will therefore set Mr. Ofodile's and Mr. Karlin's hourly rates in accordance with the rates awarded in other civil rights cases before the Southern District of New York. Defendant argues that this rate is $300 an hour, but it cites only a single case in support, *Kinneary v. City of New York*, 536 F. Supp. 2d 326, 335 (S.D.N.Y. 2008) (Marrero, J.) *rev'd on other grounds*, 601 F.3d 151 (2d Cir. 2010). Rather, the Court sets Mr. Ofodile's and Mr. Karlin's hourly rates at $400 an hour. This is in line with the hourly rates set for attorneys with similar experience and backgrounds in this forum. *See, e.g.*, *Finch v. New York State Office of Children & Family Servs.*, 861 F. Supp. 2d 145, 153 (S.D.N.Y. 2012) (Scheindlin, J.) ($450 an hour for lead attorney with forty-two years of experience); *Rosado v. City of New York*, 11 Civ. 4285, 2012 WL 955510, at *4–5 (S.D.N.Y. Mar. 15, 2012) (Scheindlin, J.) ($350 an hour for an attorney with nine years of experience); *Davis v. City of New York*, 10 Civ. 699, 2011 WL 4946243, *5 (S.D.N.Y. Oct. 18, 2011) (Scheindlin, J.) ($425 an hour for partner with thirty-one years of experience and $400 an hour for partners with twenty and twenty-four years of experience); *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 246 (S.D.N.Y. 2010) (Haight, J.) ($400 an hour for five attorneys admitted to the bar in the 1960s and 1970s); *Mugavero*, 2010 WL 451045, at *4 (lead attorney compensated at $350 an hour); *Tatum v. City of New York*, 06 CV 4290, 2010 WL 334975, at *4–5 (S.D.N.Y. Jan. 28, 2010) (Gardephe, J.) ($400 and $450 an hour for attorneys with a combined total of twenty-seven years of experience); *Simmonds v. New York City Dep't of Corr.*,

---

[5] The rest of the *Arbor Hill* factors do not support awarding Mr. Ofodile and Mr. Karlin $500 an hour. This was a relatively straightforward First Amendment retaliation case involving a public employee. Neither Mr. Ofodile nor Mr. Karlin state that they were precluded from taking on other cases because of the time-constraints imposed by this case. Mr. Ofodile did not state his customary hourly rate and while Mr. Karlin did, he failed to include corroborating evidence. Moreover, the length of the professional relationship with the Plaintiff was not particularly long for either attorney. Plaintiff filed this case in 2006, but Mr. Ofodile did not begin representing her until 2009. Mr. Karlin was not retained until the eve of trial in June 2011.

06 CV 5298, 2008 WL 4303474, at *5 (S.D.N.Y. Sept. 16, 2008) (Buchwald, J.) ($425 an hour for the director of the ACLU and a partner at private firm; $325 an hour for a senior attorney at private firm); *Wise v. Kelly*, 620 F. Supp. 2d 435, 447 (S.D.N.Y. 2008) (Scheindlin, J.) ($425 and $300 an hour for founding partner and an associate at a private civil-rights firm with eighteen and seventeen years of experience respectively); *Heng Chan v. Sung Yue Tung Corp.*, 03 CV. 6048, 2007 WL 1373118, at *3–4 (S.D.N.Y. May 8, 2007) (Lynch, J.) ($450 an hour for partner at private firm with sixteen years of experience and $400 for attorney with fifteen years of experience); *Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.*A., 478 F. Supp. 2d 508, 510 (S.D.N.Y. 2007) (Holwell, J.) (setting hourly rate of a partner with twenty-years of experience at $350).

ii. Mr. Washington's Reasonable Hourly Rate

Mr. Washington is a graduate of New York University School of Law and was admitted to the New York State Bar in May 2009. (Washington Aff. ¶ 1 [Dkt. No. 135]). He began working as a law clerk for Ofodile & Associates in July 2007 and as an Associate in May 2009. *Id.* Plaintiff requests $225 an hour for Mr. Washington's services. (Ofodile Decl. ¶ 15). In 2011, a court in the Southern District of New York awarded attorneys' fees for Mr. Washington's services at a rate of $150 an hour. *Quiller v. The City of New York*, No. 06 Civ. 6846, at 5–6 (S.D.N.Y. 2011) (Yanthis, Mag.) [Dkt. No. 62].

Other than his own affidavit, which simply details the above information and a time-log, Mr. Washington does not submit any other supporting evidence. Mr. Washington has therefore failed to carry his burden that $225 an hour is a reasonable hourly rate for an attorney of his experience. Defendant argues that because Mr. Washington "performed work primarily in 2010 and 2011," when he was a second and third year associate, his "hourly rate should . . . reflect his

lack of experience and $150.00 an hour would be an appropriate rate." (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Attorneys Fees and Costs, at 6 [Dkt. No. 143]).

The Court sets Mr. Washington's hourly rate at $200 an hour.  This is in accordance with hourly rates awarded to other civil rights attorneys with similar experience in this court.  *See, e.g.*, *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 430–31 (S.D.N.Y. 2011) (Preska, J.) ("Associates in civil rights law firms with approximately three years of experience have typically been awarded amounts ranging from $125 per hour to $200 per hour . . . Inexperienced first-and second-year associates at small law firms have been awarded between $125 and $200 per hour.") *aff'd*, 487 F. App'x 619 (2d Cir. 2012); *Pakter v. New York City Dep't of Educ.*, 08 CV. 7673, 2010 WL 5653397, at *3 (S.D.N.Y. Oct. 26, 2010) (Fox, Mag.) *report and recommendation adopted*, 2011 WL 308272 (S.D.N.Y. Jan. 31, 2011) (Batts, J.) ("In the Southern District of New York, reasonable hourly rates for junior associates vary: (a) $275 for a junior associate at a well-regarded civil-rights law firm; (b) $250 for junior associates at a mid-size law firm specializing in civil rights employment law; (c) $225 for junior associates in their first-year of experience; and (d) $200 to a junior associate who was a first-year attorney during the bulk of the case."); *Auto. Club of New York, Inc. v. Dykstra*, 04 CV 2576, 2010 WL 3529235, at *3 (S.D.N.Y. Aug. 24, 2010) (Stein, J.) (finding $200 an hour reasonable for junior associates); *Simmonds,* 2008 WL 4303474, at *5 (awarding $250 an hour for junior attorneys at the ACLU and $225 an hour for a junior attorney at private firm); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (Francis, Mag.) (setting rate at $250 an hour for junior associates).

      b.   Hours Reasonably Expended on Case

The fee applicant bears the burden of establishing the hours reasonably expended on the case and must submit adequate documentation of those hours. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In the Second Circuit, the fee applicant must normally submit contemporaneously prepared time records. *See, e.g.*, *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done after the date of this opinion should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."). The fee applicant must exercise "billing judgment" and exclude any hours that were not reasonably expended on the case. *Hensley*, 461 U.S. at 433-34. "[T]he district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). In making a reduction in hours for excessive, redundant or unnecessary hours, the district court may make an across-the-board percentage cut in hours. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987).

i. Mr. Ofodile

1. Attorney Hours

Plaintiff seeks compensation for 574.7 attorney hours that Mr. Ofodile expended in litigating her case. The Court finds most of Mr. Ofodile's hours reasonable, but will reduce Mr. Ofodile's hours by 10% to account for the inclusion of some excessive, redundant, and unnecessary hours. *Cf. Adorno*, 685 F. Supp. at 515 (reducing hours by "10% to account for excess, duplicativeness, and waste"). A number of Mr. Ofodile's entries contain "block-billing"—the inclusion of more than one task in an entry—making it difficult for the Court to

ascertain whether hours recorded in those entries were reasonable. *See, e.g.*, Ofodile Time Record of 7/12/11 [Dkt. No. 134] ("Trial preparation, researching and preparing for legal issues raised at trial, communications with Client, reading deposition transcripts of witnesses, speaking with Dr. Rhee several times for long periods of time, meeting with private investigator to get present location of Bonds, Schwartz, etc. 8 hours); Ofodile Time Record of 12/18/12 [Dkt. No. 134 ("Drafting, completing editing and re-editing Affidavit of Okoli and emailing same to him, beginning Ofodile Affidavit, 7 hours and 12 minutes); *cf. Wise*, 620 F. Supp. 2d at 452 (reducing vague entries by 25% and block-billed entries by 20%). In addition, some of these block-billed entries include time for administrative tasks that could have been performed by a person other than an attorney, which also justifies a modest percent reduction. *See E.S.*, 796 F. Supp. 2d at 431 ("A court has discretion to make across-the-board percentage reductions to exclude unreasonable hours . . . A court may make such reductions when attorneys engage in less skilled work, like filing and other administrative tasks."). For example, Mr. Ofodile's time record of October 21, 2011 reads: "Completed and filed Plaintiff's Reply Memo in Support of Motion for new trial on damages and equitable relief." Filing papers, however, is generally considered an administrative task for which attorneys' fees are "not usually considered recoverable." *Broome v. Biondi*, 17 F. Supp. 2d 230, 236 (S.D.N.Y. 1997) (Carter, J.). The total hours attributable to Mr. Ofodile's substantive work are reduced to 517.23.

## 2. Travel Hours

The practice in this district is to compensate attorneys for travel time at half of their normal hourly rate. *See Rozell*, 576 F. Supp. at 540 ("[T]ravel time is appropriately compensated at half of counsel's normal billing rate."). In line with this practice, Plaintiff seeks compensation for 20 hours of travel time at half Mr. Ofodile's hourly rate. The Court, however, locates only 16

hours of travel time in Mr. Ofodile's time record. Accordingly the Court will reduce Mr. Ofodile's travel hours to 16 hours.

> ii. Mr. Karlin

Plaintiff seeks compensation for 120.30 hours of attorney hours Mr. Karlin expended in litigating this case. After reviewing Mr. Karlin's time records, the Court finds this hours request reasonable. Defendant asks the court to exclude the five hours recorded from June 23, 2011 "to date" for the "receipt of over 100 emails," which it contends is an administrative task. Mr. Karlin's reply declaration clarifies that the five hours included time spent reading the emails, not just receiving them. (Karlin Reply Declaration ¶ 4 [Dkt. No. 146]). Reading over 100 emails in five hours means spending, at most, three minutes per email, which is reasonable; the Court will not exclude these hours.

> iii. Mr. Washington

Defendant urges the Court not to compensate Plaintiff for any of Mr. Washington's hours because his affidavit does not state that his time records were contemporaneously prepared, as required by the Second Circuit.[6] In a supplemental letter submitted upon the Court's request, Mr. Washington confirms that his time records for this case were not maintained contemporaneously. (Letter from Abdul Washington to Judge Wood (November 7, 2013) [Dkt.

---

[6] In responding to this assertion in her Reply Memorandum, Plaintiff states that Mr. Washington was required to keep time records as a condition of employment and when Mr. Ofodile asked Mr. Washington to create an affirmation for the motion for attorneys' fees, Mr. Washington used his computer-maintained time records. (Plaintiff's Reply Memorandum of Law in Support of Motion for Attorneys Fees and Costs, at 4-5 [Dkt. No. 147]). The Reply Memorandum used wording that was open to the interpretation that Mr. Washington's time records were contemporaneously-maintained and did not disclose affirmatively that they were not. The Court therefore requested Mr. Washington submit a supplemental affidavit clarifying whether his time records were contemporaneous. It was only then that Mr. Washington submitted the letter stating that his time records for this case were not contemporaneous. Although Plaintiff's Reply Memorandum did not make any false statement and thereby violate Rule 3.3(a)(1) of the New York Rules of Professional Conduct, it was, at the very least, open to misinterpretation. "Courts rely on forthright and accurate representations by counsel in making their decisions." *Soley v. Wasserman*, 08 CIV 9262, 2013 WL 3185555, at *1 (S.D.N.Y. June 21, 2013) (Wood, J.). For this reason the Court was disappointed that Plaintiff's counsel failed to reveal that Mr. Washington's time records were not contemporaneous in Plaintiff's Reply Memorandum and instead provided the Court with ambiguous information. In the future, counsel should be forthright in all submissions to the Court.

No. 148]). Plaintiff does not argue that this is one of the rare circumstances in which the court may award fees even in the absence of contemporaneous records. *See Scott*, 626 F.3d at 134. Therefore Plaintiff's request for attorney's fees for Mr. Washington must be denied.

III.  Presumptively Reasonable Fee

The presumptively reasonable fees for each of Plaintiff's attorneys are as follows:

| Attorney | Hourly Rate | Reasonable Hours | Fee |
|---|---|---|---|
| **Mr. Ofodile** | $400 | 517.23 + 16 travel hours (at ½ hourly rate) | $210,092.00 |
| **Mr. Karlin** | $400 | 120.30 | $48,120.00 |
| **Mr. Washington** | $200 | 0 | $0 |
| **TOTAL** | | | $258,212.00 |

IV.  Adjustments to Presumptively Reasonable Fee

A court may make adjustments to the presumptively reasonable fee before making a final fee award. The "'most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained,'" because, "if 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). "Both 'the *quantity* and quality of relief obtained,' as compared to what the plaintiff sought to achieve as evidenced in [the] complaint, are key factors in determining the degree of success achieved." *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (emphasis added) (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)).

Defendant argues that the fees and costs Plaintiff requests "for a $25,000.00 jury award, when nearly $900,000.00 was sought, [are] both excessive and unreasonable." (Defendant's

Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees and Costs, at 3 [Dkt. No. 143]).  Plaintiff achieved her primary goal: monetary compensation for Defendant's violation of her First Amendment rights.  Plaintiff also achieved a secondary goal: equitable relief requiring Defendant to change her unsatisfactory rating to a satisfactory rating for the 2003-2004 academic year and to expunge from her records the documents upon which Defendant's rating was based.  However, Plaintiff did not succeed entirely.  The Court dismissed Plaintiff's substantive due process, breach of contract, negligence, and intentional infliction of emotional distress claims.  *See Spencer v. City of New York*, 06 CV. 2852, 2007 WL 1573871, at *2–4 (S.D.N.Y. May 30, 2007) (Wood, J.).  Plaintiff sought $220,000 in back pay, but the jury awarded her only $25,000.  Transcript of Jury Trial at 896 [Dkt. No. 107].  Plaintiff also sought $176,000 in front pay, $500,000 in emotional damages, and an unspecified amount of punitive damages.  *Id.*  The jury did not award Plaintiff any front pay or punitive damages, and did not find that Plaintiff suffered emotional distress.  *Id*.  Accordingly, the Court will reduce Plaintiff's presumptively reasonable fee award by 10% to account for her limited success.

     V.     Final Fee Award

After adjusting Plaintiff's presumptively reasonable fees by 10% for lack of success, the final fee award for each of Plaintiff's attorneys is as follows:

| Attorney | Hourly Rate | Reasonable Hours | Presumptively Reasonable Fee | 10% Reduction |
|---|---|---|---|---|
| **Mr. Ofodile** | $400 | 517.23 + 16 travel hours (at ½ hourly rate) | $210,092.00 | $189,082.80 |
| **Mr. Karlin** | $400 | 120.30 | $48,120.00 | $43,308.00 |
| **Mr. Washington** | $200 | 0 | $0 | $0 |
| **TOTAL** | | | | $232,390.80 |

     VI.     Costs

The "award[] of attorney's fees in civil rights suits under fee-shifting statutes . . . 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged [to] fee-paying clients.'" *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (citing *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C. Cir. 1984)). Recoverable costs are those that can be attached to the advancement of a specific claim and are not so general that they qualify as overhead or office expense. *Marshall v. State of N.Y. Div. of State Police*, 31 F. Supp. 2d 100, 110 (N.D.N.Y. 1998). "Courts have identified the following non-exhaustive list of expenses as those ordinarily charged to clients, and therefore, recoverable: photocopying, travel, telephone costs, and postage." *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 401 (S.D.N.Y. 2000) (Ward, J.).

Plaintiff seeks $5,882.15 in costs expended by Ofodile & Associates, P.C., for filing the case, subpoenaing witnesses, serving subpoenas, copying, velo-binding, and purchasing deposition transcripts and exhibit-tabs. Plaintiff, however, did not itemize all of its costs, making it difficult for the Court to determine whether each expenditure was reasonable. Moreover, although Plaintiff attached photocopies of checks as proof of costs, these checks do not add up to the full amount requested.

A reduction in Plaintiff's requested costs is therefore warranted.[7] *See, e.g.*, *Gonzalez*, 147 F. Supp. 2d at 213 (making a 12% reduction in costs for, among other things, not identifying "miscellaneous" expenses and per-unit costs for copying and faxing). The Court will make a

---

[7] There is some precedent for denying recovery of costs altogether for lack of documentation. In *Hightower v. Nassau County Sheriff's Department*, in which Mr. Ofodile was the plaintiff's trial counsel, the court allowed recovery only for those costs supported by invoices. *See* 325 F. Supp. 2d 199, 217 *opinion vacated in part on reconsideration*, 343 F. Supp. 2d 191 (E.D.N.Y. 2004). Similarly, in *Wise*, the court recommended that Defendants not submit payment for recoverable costs until Plaintiff's counsel provided them with the relevant invoices. *See* 620 F. Supp. 2d 435, 457 (S.D.N.Y. 2008) (Scheindlin, J). Although the Court declines to follow this precedent, the Court urges counsel to submit itemized records and documentation of all costs in the future.

10% reduction in the costs expended by Ofodile & Associates, P.C.; Plaintiff will recover $5,293.94 for these costs.

Plaintiff also seeks $1,375.00 in costs expended by Mr. Karlin.  Mr. Karlin's affidavit states that $850.00 was spent on trial transcripts to prepare for his closing arguments and $525.00 was spent on copying approximately 1,500 pages at 35 cents per page.  (Karlin Declaration ¶ 8).  Plaintiff will be reimbursed fully for these costs expended by Mr. Karlin.

VII.   Conclusion

Plaintiff is hereby awarded attorneys' fees in the amount of $232,390.80 and costs in the amount of $6,668.94.

SO ORDERED.


DATED:   New York, New York
         November 12, 2013

_____/s/_____
KIMBA M. WOOD
United States District Judge